In the Matter of Henry J. BONANNO, Debtor.

L.M. DUNCAN & SONS, INC., Plaintiff,

v.

Henry J. BONANNO, Individually and d/b/a Done Right Electrical Services, Defendant.

Bankruptcy No. 83–1751.
Adv. No. 84–36.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 17, 1985.

V. James Dickson, St. Petersburg, Fla., for plaintiff.

Lawrence Kleinfeld, St. Petersburg, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the immediate matter under consideration is the dischargeability, vel non, of a debt in the amount of $3,042 allegedly owed by Henry J. Bonanno, Debtor, to L.M. Duncan & Sons, Inc. The Plaintiff filed a two Count Complaint and seeks, in Count I, a determination that the debt is non-dischargeable by virtue of § 523(a)(2)(A). Count II is based on § 523(a)(4), however,

prior to the evidentiary hearing in this cause, the Plaintiff voluntarily dismissed Count II. Thus, the sole question before this Court is whether the Debtor with intent to deceive, made materially false representations upon which the Plaintiff relied to its economic detriment.

The Court heard testimony of witnesses, argument of counsel, considered the record and finds the following facts:

The Debtor is an electrical subcontractor, who over a period of approximately ten years, performed various electrical services for the Plaintiff, a general contractor. On May 7, 1982, the Plaintiff and the Debtor, under the name of Done Right Electrical Service, executed a subcontract agreement for certain electrical work to be performed on a project known as the Pinellas County Solid Waste (PCSW) project; on June 11, 1982, the same parties executed a second subcontract agreement for electrical work on the Flagship Bank project. (Pl's Exh. Nos. 1 & 2). The Debtor signed the agreements as President of Done Right.

In order for a subcontractor to receive final payment for services performed, the Plaintiff requires the execution of a "Waiver of Lien" which provides in part:

> It is also sworn that all laborers and/or material suppliers, who furnished labor and/or materials for the above mentioned property, have been paid."

Affidavits for both the PCSW and Flagship Bank projects, dated August 29, 1982, were delivered to the Plaintiff (Pl's Exh. Nos. 3 & 6). Although the documents appear to have been signed by the Debtor, as President of Done Right Electrical Service, it is without dispute that at the time, the Debtor was in a hospital in Massachusetts, having suffered a heart attack on or about August 10, 1982.

On August 30, 1982, the Plaintiff released two separate checks in favor of Done Right Electrical Service, one in the amount of $1,944 (Pl's Exh. No. 4) and the other in the amount of $1,788.75 (Pl's Exh. No. 5). The checks are both dated August 9, 1982.

Thereafter, Consolidated Pasco Electric Supply, Inc. filed a claim against the Plaintiff's bond in the PCSW project and a lien against the Flagship Bank project (Pl's Exh. Nos. 5 & 8). Ultimately, the Plaintiff paid off the claims of Consolidated and now seeks a declaration that its damages as a result of double payment in the amount of $3,042 be declared a non-dischargeable debt of this individual Debtor.

It is the Plaintiff's position that the Debtor, with intent to deceive, executed the materially false Waivers of Lien and that in reliance on the Waivers, the Plaintiff paid the Debtor, only to find that the Debtor had not paid all of his suppliers. Thus, the Plaintiff was also compelled to make payment to Consolidated Pasco, a supplier who had not been paid by the Debtor. Further, the Plaintiff contends that despite the fact that the subcontracts and affidavits were executed by the Debtor in his capacity as a corporate officer of Done Right Electrical Service, the Debtor is individually liable because Done Right Electrical Service is neither a registered corporate name nor a fictitious name of a registered corporation.

It is the Debtor's position that (1) he did not sign the Waivers of Lien inasmuch as he was hospitalized and not permitted to be involved with any business affairs; (2) even if he *had* signed the Waivers, he had no knowledge of their truth; (3) the Plaintiff did not act in reliance on the Waivers; (4) the Debtor's business was incorporated under the name of D.I.Y., Inc. and the Plaintiff knew this when it executed the subcontracts; and (5) that the Debtor did not receive the funds but they were deposited into the accounts of D.I.Y., Inc. and used to pay operating expenses.

Section 523(a)(2)(A) provides:

§ 523. Exceptions to Discharge

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money ... to the extent obtained by—

(A) ... a false representation, or actual fraud ...

There is no doubt that the Waivers of Lien submitted to the Plaintiff were false. Further, this Court is satisfied that the Debtor individually derived the benefit from the sums received inasmuch as he basically operated his business as a one man corporation. There is no doubt that the benefits flowed through the entity to the Debtor. Thus, this Court is satisfied that if the Plaintiff were able to establish the operating elements of § 523(a)(2)(A) with the requisite degree of proof, the debt would be declared non-dischargeable as to this Debtor.

The Court finds, however, that the evidence as to whether or not this Debtor actually executed the Waivers is in equilibrium. Of course, where the evidence is equally balanced, and the Plaintiff has failed to carry its burden, the Defendant must prevail.

In addition, this Court finds that record is absolutely devoid of any evidence to establish this Debtor's intent to deceive or defraud. Therefore, the Plaintiff has failed to carry the burden and the debt shall be declared to be dischargeable.

A separate final judgment will be entered in accordance with the foregoing.